A08A0066. COX v. THE STATE.

(666 SE2d 379)

ADAMS, Judge.

Rafael Cox appeals from the denial of his motion for new trial following his conviction on one count of armed robbery. We affirm.

In addition to the armed robbery charge, Cox was originally indicted, along with co-defendants Bobby White and Rico Williams, on one count of murder, two counts of felony murder and two counts of aggravated assault in connection with an incident that occurred in the late evening, early morning hours of August 28-29, 2002.[1] A fourth co-defendant, Quentin Thomas, was indicted on the sole charge of theft by receiving stolen property. The evidence at trial showed that Valerie Powell came home from work early on the morning of August 29, 2002, and discovered her son, Chaz Powell, shot dead in his bedroom. Williams testified that sometime earlier, White, Cox, Thomas and he had gone to the Powells' apartment to buy some marijuana from Chaz Powell. White, Cox and Williams went into the apartment, while Thomas stayed in the car. The four men inside were smoking marijuana in the living room, when White pointed a pistol at Chaz Powell, and told him, "Cuz, I got to have it,"

---

[1] The jury acquitted Cox on all remaining counts.

apparently referring to money Powell had acquired from dealing drugs. Williams stated that both he and Cox were surprised by White's actions. He said there had been no discussion about anything other than buying marijuana from Powell that night. White then walked Powell upstairs at gunpoint, and Cox began to follow them. Williams believed that Cox intended to stop White, although Cox did not voice his intentions. As Williams exited the apartment, he heard a single gunshot.

Williams got into the car where Thomas was waiting. Within seconds, White and Cox came out of the apartment. Williams said that Cox carried a rifle belonging to Chaz Powell, and White and he put it into the trunk before getting into the car. White then discovered that he had mistakenly taken Chaz Powell's cell phone and left his own in the Powells' apartment. He broke Powell's phone and threw it out the window. After the four left the apartment complex, they stopped at a convenience store, where White and Cox went inside together to make a purchase, before taking Williams home.

Cox was arrested after Thomas told the police who had been to the Powells' apartment that night. Cox initially told police that he and White had gone to the apartment to buy marijuana and that Chaz Powell said he wanted to buy White's cell phone. He said White went into the apartment with Powell and when he came out, White had some marijuana and some money. In his second statement to police, Cox admitted he had been present at the time of the robbery, and although he stated that he "didn't want no part of it," he admitted that he had accepted $100 from White. He said that he only took the money to pay off some outstanding speeding tickets.

Cox testified at trial that on the night of the crime there were no discussions about doing anything to Powell other than buying marijuana from him. He did not know that White was carrying a gun until he pulled it out and pointed it at Powell. He said he was puzzled by White's actions. Cox followed White and Powell to about the second or third step, trying to get White to stop. When White did not respond, Cox turned around and left the apartment. He denied taking Powell's rifle from the apartment. Cox thought White offered him the $100 that night "for putting me in that situation" and to try to keep him quiet, although White said nothing. Cox took the money because he was "really in need of it at the time." He said that he did not know that it was money White had taken from Powell.

1. Cox asserts that the trial court erred in denying his motion for directed verdict. He asserts that although he was indicted as a party to the crime of armed robbery, the evidence showed, at most, that he was an accessory after the fact in accepting $100 from White.

"At common law and under modern practice, an accessory after the fact is not considered an accomplice to the underlying crime itself, but is guilty of a separate, substantive offense in the nature of an obstruction of justice." (Punctuation and footnote omitted.) *State v. Freeman*, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000). Nevertheless, a defendant does not have to directly commit a crime in order to be convicted of that crime:

> A participant to a crime may be convicted although he is not the person who directly commits the crime. A person who intentionally aids or abets in the commission of a crime or intentionally advises, encourages, hires, counsels or procures another to commit the crime may be convicted of the crime as a party to the crime. Mere presence at the scene is not sufficient to convict one of being a party to a crime, but criminal intent may be inferred from conduct before, during, and *after* the commission of a crime.

(Punctuation and footnote omitted; emphasis in original.) *Jordan v. State*, 281 Ga. App. 419, 422 (1) (636 SE2d 151) (2006). Thus, under OCGA § 16-2-21 "[a]ny party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto." The question of whether Cox was a party to the armed robbery in this case was for the jury to resolve. *Buruca v. State*, 278 Ga. App. 650, 652 (1) (629 SE2d 438) (2006).

Here, the record contains evidence from which the jury could have concluded that Cox participated in the robbery. He was in the apartment when White pointed the gun at Powell and demanded his money. He left the apartment at about the same time as White and was seen carrying the victim's gun and stowing it in the trunk of White's car. Cox then rode with White and the others to a store, where White and he went in together to make their purchases. Cox also accepted $100 from White, which he believed was intended to keep him quiet. Then following his arrest, Cox invented a story in an attempt to explain why White's cell phone was at the crime scene. The jury could have concluded from this evidence that even if Cox had not planned the robbery with White in advance, he chose to participate in the crime after White began it. Thus, Cox's presence and actions at the scene of the crime, when coupled with his behavior afterward, were sufficient to support the jury's verdict against him as a party to the crime of armed robbery. *Jordan v. State*, 281 Ga. App. at 422-423 (1); *Butler v. State*, 259 Ga. App. 190 (576 SE2d 596) (2003). We find no error, therefore, in the trial court's denial of Cox's motion for directed verdict.

2. Cox next argues that the trial court abused its discretion in allowing the State to strike a juror after the entire panel had been selected in violation of OCGA § 15-12-166. That section requires that "a juror, after acceptance by both the State and the defense, shall be sworn" and that after discovering that the defense has accepted a particular juror, the State "cannot then change its mind and excuse the juror." *Sakobie v. State*, 115 Ga. App. 460 (2) (154 SE2d 830) (1967).

It appears from the record that the parties used the so-called "silent strike" method of selecting a jury, "i.e., the practice that precludes jurors from being aware of which party excused them." (Citations omitted.) *Moore v. State*, 279 Ga. 45, 46 (2) (609 SE2d 340) (2005). Immediately after fourteen jurors, including two alternates, were named and asked by the court to "please come sit in the jury box," the prosecutor realized, upon reviewing his notes, that he had mistakenly failed to write down one of his strikes. At that point, the State had used only three of its peremptory challenges. The trial court announced that a mistake had been made and excused the juror at issue. The trial then proceeded with one alternate, instead of two.

Although OCGA § 15-12-166 requires that a juror in a felony case be sworn in after acceptance by the parties, not every deviation from this rule justifies a reversal and new trial. In *Thompkins v. State*, the court clerk mistakenly informed the State that it had exercised all of its peremptory challenges. After the defense accepted the next prospective juror, the prosecutor determined that the State actually had one remaining peremptory challenge. The trial court then allowed the State to question the last seated juror and to exercise its remaining strike to excuse that juror. *Thompkins v. State*, 181 Ga. App. 158, 159 (2) (351 SE2d 475) (1986). This Court found that the trial court did not err in denying a motion for new trial under OCGA § 15-12-166, because the trial court's actions in correcting the clerk's mistake were intended to preserve the strikes allowed to the State and not to circumvent OCGA § 15-12-166. Id. See also *Sakobie v. State*, 115 Ga. App. at 460 (2) (where this Court deferred to the trial court's determination as to whether the defendant had accepted a juror before the State announced its strike of the same juror).

We see no significant difference in the facts in *Thompkins* and the facts before us in this case. Here, the State mistakenly failed to record its intention to strike a juror. The prosecutor promptly recognized his mistake and informed the court, who then allowed the State to exercise one of its remaining strikes to excuse the juror. As this Court noted in *Thompkins*,

[i]t is well established that the system by which juries are selected does not include the right of any party to select certain jurors but to permit parties to protect themselves against prejudice by allowing them to exclude unacceptable jurors. Defendant has no vested right to a particular juror.

(Citation and punctuation omitted.) *Thompkins v. State*, 181 Ga. App. at 159 (2). Cox does not assert that any of the remaining jurors was unacceptable or that the procedure used by the trial court forced him to use one of his peremptory strikes improperly. Rather, "[h]is claim of error is directed only at the procedure used, with no evidence — or assertion — of harm resulting therefrom." (Footnote omitted.) *Chambers v. State*, 252 Ga. App. 190, 193 (3) (556 SE2d 444) (2001). Accordingly, we cannot say that the trial court erred in denying Cox's motion for new trial on this ground, because "[h]arm, as well as error, must be shown to authorize a reversal by this Court." (Citation omitted.) *Nobles v. State*, 201 Ga. App. 483, 488 (9) (411 SE2d 294) (1991).

3. Cox also asserts that the trial court erred in failing to grant a motion for mistrial sua sponte when, on the fifth day of trial, a prisoner on trial in another courtroom wrestled a gun away from a deputy and shot three people to death.

The decision whether to grant a mistrial lies within the trial court's discretion and must be based upon a consideration of the surrounding circumstances in their totality. *Messer v. State*, 247 Ga. 316, 324 (6) (276 SE2d 15) (1981); *Putnam v. State*, 245 Ga. App. 95, 97 (537 SE2d 384) (2000). "A trial court is required to act sua sponte only if there is a manifest necessity for a mistrial." (Citation omitted.) *Wright v. State*, 276 Ga. 419, 420 (2) (577 SE2d 782) (2003). "And manifest necessity requires urgent circumstances." (Citation and footnote omitted.) *McGee v. State*, 287 Ga. App. 839, 841 (1) (652 SE2d 822) (2007). Moreover, a trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference. *Putnam v. State*, 245 Ga. App. at 96. This "[d]eference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights." (Citation and punctuation omitted.) Id. at 97.

Here, the record reflects only that an emergency situation arose while the trial judge was conducting the charge conference in the jury's absence on a Friday morning, the fifth day of trial. A sheriff's deputy interrupted the conference to put Cox back into lockup, but told the judge that he could stay in the courtroom. The trial judge announced that they would proceed with the conference if the defendant waived his presence, but the conference was then ad-

journed at the sheriff's direction. When court re-convened the following Monday, the charge conference resumed. There is nothing in the record to indicate whether the jurors were impacted by this emergency situation or whether they were even in the courthouse at the time it occurred. Moreover, in his jury charge, the trial judge instructed the jury that they were to focus on the facts of the case and not on the facts of any other case. In a later discussion of the issue, Cox's counsel stated that this charge was probably sufficient to cover the emergency situation "because if you had been any more specific it would just draw their attention to it."

Under these circumstances, we find that the trial judge was in the best position to determine the possible impact of the situation upon the jury. *Putnam v. State*, 245 Ga. App. at 97. In the absence of any evidence in the record to show that the trial was so infected with prejudice as to deny Cox a fair trial by an impartial jury, we find no abuse of discretion. See *Messer v. State*, 247 Ga. at 324 (6) (affirming trial court's denial of motion for mistrial after victim's father lunged at defendant during trial); *Fortson v. State*, 240 Ga. 5, 6 (2) (239 SE2d 335) (1977) (trial transcript failed to show evidence of prejudice affecting the fairness of trial).

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED JUNE 11, 2008 —
RECONSIDERATION DENIED JULY 31, 2008 — 

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.