### A11A0246. GONZALEZ v. THE STATE.
#### (714 SE2d 13)

ADAMS, Judge.

Marcos Ramirez Gonzalez appeals the trial court's denial of his motion for new trial after he was convicted by a jury on one count of rape, two counts of aggravated child molestation, one count of aggravated sexual battery, and four counts of child molestation[1] involving his stepdaughter. Gonzalez does not contest the sufficiency of the evidence to support these convictions, but rather asserts error in the conduct of his trial. Accordingly, we will address the underlying facts of the case only as necessary to consider Gonzalez's arguments on appeal.

1. Gonzalez first contends that his trial counsel was deficient in failing to move for a mistrial after a juror, who spoke fluent Spanish, told the bailiff that portions of the victim's videotaped statements had not been properly translated.

> The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

---

[1] The trial court merged one count of aggravated child molestation and one count of child molestation into the rape conviction for sentencing purposes, and Gonzalez received an aggregate sentence of forty years, with thirty years to serve.

(Citation, punctuation and footnotes omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "We affirm the trial court's decision on effective assistance of counsel unless the trial court's underlying findings are clearly erroneous." (Footnote omitted.) *Leppla v. State*, 277 Ga. App. 804, 810 (2) (627 SE2d 794) (2006).

The victim's statement was videotaped and involved an interpreter's translation from English into Spanish and from Spanish into English. The parties entered into a pre-trial stipulation in which both sides agreed that the recording was a fair and accurate representation of the victim's interview and that the interpreter provided an accurate translation. This stipulation was read to the jury before the recorded statement was played. A short time later, during a break, the trial court informed counsel that a bailiff had reported that Juror Wellborn, who was fluent in Spanish, was requesting instruction "because she understands the Spanish we have" and was having "difficulty, or at least some difficulty, that she felt necessary to report, because some of the colloquialisms and translation is not necessarily the way [she] would translate it." The trial court also noted that a portion of the Spanish had not been translated at all. Gonzalez's counsel stated that she had the interview checked and she believed that the non-translated portion was innocuous, but she asked the trial court to give Juror Wellborn a curative instruction "just to rely on the English interpretation in deliberation."

The trial court then instructed Juror Wellborn individually that "to the extent you can you should set aside anything that you hear . . . in Spanish that is different than what is going to be given as the official interpretation here in the record and rely on the official interpretation." The judge also noted that there was some Spanish that was not translated that both counsel felt did not need to be translated and he asked the juror to set aside anything that she heard and understood in that regard. When the trial judge asked the juror if she could do that, she replied, "Yes, absolutely, Judge."

Gonzalez contends, however, that his trial attorney should have asked for a mistrial or at least questioned Juror Wellborn as to whether she had discussed the matter with any of the other jurors. He notes that when an irregularity appears in the conduct of the juror, prejudice is presumed and the burden is on the State to show beyond a reasonable doubt that no harm occurred. *Sims v. State*, 266 Ga. 417, 419 (3) (467 SE2d 574) (1996).

> Significantly, however, [this] presumption applies only where the issue was properly preserved at trial and raised as error on direct appeal; it does not apply in the context of an

ineffective assistance of counsel claim. In the ineffective assistance context, the burden is upon the defendant to prove actual prejudice affirmatively from the record.

*Cruz v. State*, 305 Ga. App. 805, 813 (3) (f) (700 SE2d 631) (2010).

Gonzalez's trial counsel testified at the hearing on the motion for new trial that the portion of the videotaped interview in question "was sort of an innocuous part of the tape when they were just sort of setting up the interview, [and] it was not anything substantive." So she was satisfied with the trial court's curative instruction and felt it was not necessary to move for a mistrial. Because Gonzalez neither identified the pertinent portion of the videotaped statement nor provided an English transcription of any untranslated portions, we have no way to evaluate his counsel's analysis of the issue. Thus, Gonzalez failed to prove that his counsel's trial conduct was in any way deficient, and we are left with the "strong presumption" that counsel's performance fell "within the broad range of professional conduct." (Citation omitted.) *Pruitt v. State,* 282 Ga. 30, 34 (4) (644 SE2d 837) (2007).

By omitting any identification of the pertinent testimony, Gonzalez also failed to demonstrate that his defense was prejudiced. Further, Gonzalez provided no record support for his assertion that Juror Wellborn spoke with the bailiff about this issue in front of the other jurors; there is nothing in the record to demonstrate that the other jurors were even aware of her concern. And Juror Wellborn stated that she "absolutely" could rely on the official interpretation. Accordingly, Gonzalez has not established a reasonable probability that the outcome of his trial would have been different but for his counsel's alleged deficiency. See *Cruz v. State*, 305 Ga. App. at 813 (3) (f); *Sullivan v. State*, 295 Ga. App. 145, 155 (7) (a) (671 SE2d 180) (2008).

2. Gonzalez next asserts that the trial court erred by failing to grant a mistrial sua sponte in response to the incident involving Juror Wellborn.

In the absence of any request for a mistrial, the trial court was required to act sua sponte only if there was a manifest necessity for a mistrial. *Wright v. State*, 276 Ga. 419, 420 (2) (577 SE2d 782) (2003). "And manifest necessity requires urgent circumstances." (Citation and punctuation omitted.) *Cox v. State*, 293 Ga. App. 98, 102 (3) (666 SE2d 379) (2008). A trial court's decision whether to grant a mistrial lies within its discretion based upon a consideration of the totality of the surrounding circumstances. Id. Thus,

a trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference. This

deference to the judge's sound discretion also precludes a reviewing court from assuming, in the absence of record evidence, that the trial judge deprived a defendant of constitutional rights.

(Citations and punctuation omitted.) *Moore v. State*, 301 Ga. App. 220, 224 (2) (687 SE2d 259) (2009).

Gonzalez claims a mistrial was required because Juror Wellborn's conversation with the bailiff was in front of the other jurors, and it is unclear as to what she might have communicated to them about the translation. But as noted above, nothing in the record supports Gonzalez's assertion that the other jurors were privy to Juror Wellborn's conversation with the bailiff. Nor is there any evidence that they were in any way tainted by Wellborn's independent interpretation of the videotaped interview. Accordingly, the record does not demonstrate a manifest necessity for a mistrial, and we cannot assume in the absence of such record evidence that the trial was so infected with prejudice as to deprive Gonzalez of a fair trial by an impartial jury. See *Lawton v. State*, 281 Ga. 459, 462-463 (3) (640 SE2d 14) (2007) (circumstances surrounding juror's outburst in front of other jurors fell far short of demonstrating manifest necessity for mistrial); *Cox v. State*, 293 Ga. App. at 103 (3). This enumeration is without merit.

3. Gonzalez also argues that the trial court erred in allowing a victim-witness advocate employed by the district attorney's office to sit with the victim during her testimony to provide support.

> Prior decisions [of this Court] have recognized a broad discretion on the part of the trial court in controlling the trial of a case, have allowed a great deal of latitude in the examination of young, timid, or otherwise disadvantaged witnesses, and have generally found no abuse of discretion in permitting a familiar person to sit or stand near a young witness during their testimony.

(Citations omitted.) *Williamson v. State*, 234 Ga. App. 658, 658-659 (2) (507 SE2d 765) (1998). And this Court has found no abuse of discretion in allowing a county victim-witness coordinator to sit near a child while she testified when the victim had requested her presence. *Miles v. State*, 201 Ga. App. 568, 569 (5) (411 SE2d 566) (1991).

The victim in this case was 14 years old at the time of trial. After Gonzalez's attorney objected, the trial court allowed counsel to voir dire the advocate, who testified that she had met the victim on a couple of occasions and talked with her on the phone, usually in the

presence of the child's mother. She said the victim was very shy due to the difficult situation involving her stepfather. The advocate also had some concerns that the girl might be developmentally disabled. On the morning of trial, the advocate presented the victim with the option of having the advocate sit near her during her testimony if it made her more comfortable. The advocate explained that it had been difficult to get the victim to open up, and she felt that they had a rapport. She indicated that it was the victim's choice that she be there. She also confirmed that she had not coached the child in any way as to the responses she should give, but only told her that she should take her time in answering and tell the truth.

The trial judge ruled that he would allow the advocate to sit with the victim "in the event the child still does want you to sit with her" and directed the advocate to check with the victim one last time to see if that is what she wanted. He also instructed the advocate that she would have to sit five to six feet away and slightly behind the victim. He emphasized that it was very important that the advocate not convey by gesture, body language or otherwise any approval of the child's answers, nor was she to prompt the child in any way.

Gonzalez does not contend that the advocate in any way violated the trial court's instructions. Rather, he argues on appeal that a 14-year-old victim should not require such support. But his own attorney observed that the victim was "clearly very distraught and upset" prior to her testimony and she was concerned that the child might not "be able to communicate in any effective manner." The trial court later observed that it was "obviously very, very, very stressful" for the victim to testify and that she was "struggling with this." Under these circumstances, Gonzalez's generalized statements that this procedure somehow prejudiced his defense fall short of demonstrating that the trial court abused its discretion in allowing the advocate at trial. See *Bell v. State*, 294 Ga. App. 779, 780-781 (3) (670 SE2d 476) (2008) (no abuse of discretion in allowing prosecutor to use leading questions to examine 14-year-old victim who demonstrated timidity and fear); *Miles v. State*, 201 Ga. App. at 569 (5).

4. Gonzalez enumerates that the trial court erred by not allowing him a sifting and thorough cross-examination of the victim's mother "concerning her bias, interest and motive in [him] being convicted of the charged crimes creating a potential avenue for her to obtain a VAWA petition[2] and remain in the country legally."

---

[2] Gonzalez's appellate brief states, without citation, that a "VAWA petition" is a "special visa for victims of domestic violence under the immigration laws," and his trial counsel represented to the trial court that it is "special protection for illegal citizens, protection under domestic violence law, under immigration law."

He asserts this examination was relevant to his sole defense that the mother fabricated the charges as a way of more quickly obtaining a favorable immigration status. Gonzalez concedes, however, that after he conducted voir dire of the mother outside the presence of the jury, the trial court allowed him to ask questions on these topics. Notably, Gonzalez does not point to any particular testimony that the trial judge prevented him from presenting. Rather, the gist of his appellate argument appears to be that the trial judge erred by requiring him to "preview" his cross-examination during voir dire, which caused him to lose the element of surprise with the witness, undercutting his defense strategy.

> Although OCGA § 24-9-64 entitles a defendant to a thorough and sifting cross-examination of witnesses against him, the trial court is vested with discretion to limit the scope of cross-examination to matters that are material to the issues. . . . [And t]he trial court's exercise of its discretion to curtail cross-examination will not be disturbed on appeal unless it is abused.

(Citations omitted.) *Chambers v. State*, 308 Ga. App. 748 (1) (708 SE2d 651) (2011). See also *Shaw v. State*, 241 Ga. 308, 311 (7) (245 SE2d 262) (1978) (trial judge has discretion to exclude even admissible evidence if he determines that its prejudicial impact substantially outweighs its probative value).

Following voir dire of the mother, the judge stated that he would allow the defense to "explore with the mother in the presence of the jury those issues that go to motive, interest, bias and prejudice" since Gonzalez's attorney represented that his sole defense was that the allegations were fabricated by the victim at her mother's behest. But the judge directed defense counsel to stay away from "illegally crossing the border and things of that nature." The trial judge had previously expressed his concern to counsel that "how a victim gets [into the United States] one way or the other is irrelevant . . . [because] everybody is entitled to the protection of our law."[3] Having reviewed the voir dire and cross-examination of the mother, we find no abuse of discretion.

In any event, the trial court did not actually *require* Gonzalez's trial counsel to conduct voir dire of the mother. Instead, he gave her

---

[3] Although the trial judge raised this issue sua sponte, he did so following the cross-examination of the victim, during which the absence of objection from the State led him to believe that counsel had misinterpreted his prior ruling in an earlier, unrecorded bench conference. The judge held that conference in response to an objection from the State on the relevance of Gonzalez's attorney cross-examining the victim about how she came to the United States.

the option of issuing his ruling without any voir dire. She replied, "Judge, I'm not saying that," and posed an objection to being forced to explain to the State "what my defense is." "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish." (Citation and punctuation omitted.) *Kolokouris v. State,* 271 Ga. 597, 600 (4) (523 SE2d 311) (1999). We find no violation of the Confrontation Clause in this case.

5. Gonzalez contends that the trial court erred in denying his motion for directed verdict at the close of the State's case on the ground that no witness had pointed to him in the courtroom as being the perpetrator of the crimes. Gonzalez further contends that the trial court erred by instead allowing the State then to reopen its evidence and use the opportunity to bolster its witnesses' statements through repetition of their prior testimony.

"It is within the discretion of the trial court to permit the state to reopen its case after the close of the evidence; and the trial court may deny a directed verdict of acquittal to permit the state to proffer evidence previously overlooked." (Citation and punctuation omitted.) *Ramey v. State,* 288 Ga. App. 800, 802 (655 SE2d 675) (2007). See also *In the Interest of A. L. S.,* 261 Ga. App. 778, 779 (1) (584 SE2d 27) (2003) (court has broad discretion to reopen a case even after the defendant moved for directed verdict).

The State argued in response to the defendant's motion for directed verdict that it, in fact, had established identity. Although no one pointed to the defendant and identified him as the perpetrator, the record shows that the victim's mother testified on direct that she recognized the defendant and that she had married him in 2004. She described her married life with Gonzalez and their children, then testified about the night she found the victim in bed on top of her "husband," which led to the charges in this case. The State argued that this was sufficient identification of the defendant as the perpetrator, but nevertheless moved to reopen the evidence to present additional evidence on identity. The trial court allowed the State to reopen the evidence for the limited purpose of identification, noting that all the witnesses were present and there would be no delay.

The State recalled the victim, her sister and her mother, who each identified Gonzalez as the man involved in the incidents to which they had previously testified. The defense objected on only one occasion, when the State asked the mother if Gonzalez was the man she saw with her daughter on the night in question, on the ground that the mother had already identified him by name. The trial court overruled the objection and the State asked only one more question:

whether Gonzales was the "gentleman" the mother saw with the victim sitting on top of him that night, to which she replied "yes."

Considering the totality of the circumstances, we find that the trial court acted well within its discretion in allowing the State to reopen its case and in properly limiting the scope of the examination afterwards. See *Ramey v. State*, 288 Ga. App. at 802; *Overton v. State*, 270 Ga. App. 285, 291 (4) (606 SE2d 306) (2004); *Gooch v. State*, 155 Ga. App. 708, 709 (1) (272 SE2d 572) (1980).

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED JUNE 30, 2011.

*Niria D. Baggett*, for appellant.
*Daniel J. Porter, District Attorney, W. Jay Hughes, Assistant District Attorney*, for appellee.