OPINION OF THE COURT
Memorandum.
Ordered that the judgments of conviction are affirmed.
Defendant was charged in separate accusatory instruments with assault in the third degree (Penal Law § 120.00 [1]), criminal contempt in the second degree (Penal Law § 215.50 [3]), and endangering the welfare of a child (Penal Law § 260.10 [1]), respectively. Following a jury trial, defendant was convicted of all charges.
On appeal, defendant contends that all three accusatory instruments were facially insufficient and that the evidence presented at trial was legally insufficient to support her convictions.
*37 Pursuant to Penal Law § 120.00 (1), a person is guilty of assault in the third degree when, “[w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person or to a third person.” Physical injury is defined as “impairment of physical condition or substantial pain” (Penal Law § 10.00 [9]). “[Substantial pain cannot be defined precisely, but . . . it is more than slight or trivial pain,” yet, the “[p]ain need not... be severe or intense to be substantial” (People v Chiddick, 8 NY3d 445, 447 [2007] [internal quotation marks omitted]). Here, the information charging defendant with assault in the third degree alleged that defendant’s nine-year-old daughter suffered pain and bruising to her head as a result of being kicked by defendant, which condition required medical attention, and that the victim had been transported to Franklin Hospital. Allegations of substantial pain, swelling and contusions, caused by a kick, are sufficient to plead the physical injury element of assault in the third degree (see People v Henderson, 92 NY2d 677, 680-681 [1999]). Therefore, this information was sufficient on its face, as it contained non-hearsay factual allegations of an evidentiary nature which established, if true, every element of Penal Law § 120.00 (1) and defendant’s commission thereof (see CPL 100.15 [3]; 100.40 [1]). As to the legal sufficiency of the evidence presented at trial, when viewing the facts in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), we find that there is a valid line of reasoning and permissible inferences from which a rational trier of fact could have determined that defendant’s guilt of assault in the third degree was proved beyond a reasonable doubt (see People v Danielson, 9 NY3d 342, 349 [2007]). The victim testified that defendant had intentionally kicked her in the head while she had been hiding underneath a table. As a result, the victim sustained a very big bruise on the top of her head, which was swollen from the kick, and she was taken to Franklin Hospital where she was prescribed medicine for the pain, which she took the following day. The victim’s medical records were entered into evidence, as were two photographs depicting her injuries. Additionally, a registered nurse at the victim’s school testified that the day after the subject incident she examined the victim, who had come to her complaining of headaches, and observed bruising on the left side of the victim’s face and ecchymosis developing under the victim’s eyebrow.
Pursuant to Penal Law § 215.50 (3), a person is guilty of criminal contempt in the second degree when she engages in *38 the conduct of “[intentional disobedience or resistance to the lawful process or other mandate of a court.” The essential elements of the crime of criminal contempt in the second degree, as charged herein, are that a lawful order of protection was in effect, that the defendant had knowledge of the order of protection, and that the defendant intentionally disobeyed it (see Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]). Here, the instrument charging defendant with criminal contempt in the second degree alleged that, on February 24, 2010, defendant had violated a valid Nassau County Family Court order of protection that had been in effect at the time by intentionally kicking her daughter in the head. Additionally, it alleged that the order of protection had been issued on February 2, 2010 by Judge Frank D. Dikranis and that defendant was aware of the order, which had been personally served upon her by the Nassau County Sheriffs Department on February 2, 2010. As a result, there were allegations from which it could be inferred that defendant had knowledge of the order of protection before she violated it (see People v Inserra, 4 NY3d 30, 33 [2004]; People v McCowan, 85 NY2d 985, 987 [1995]). Although, as defendant argues, there was a discrepancy between the instrument and a supporting deposition as to the date that defendant was actually served with the order of protection, it is uncontroverted that she was aware of its existence at the time that the violation occurred, on February 24, 2010. Thus, the discrepancy did not impact upon the jurisdictional underpinnings of the prosecution (see People v Gonzalez, 184 Misc 2d 262 [App Term, 1st Dept 2000]). Consequently, we find that this accusatory instrument was sufficient on its face. We further find that the evidence presented at trial was legally sufficient to establish defendant’s guilt of criminal contempt in the second degree.
Pursuant to Penal Law § 260.10 (1), a person is guilty of endangering the welfare of a child when, among other things, “she knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old.” Criminal liability for endangering the welfare of a child is imposed when a defendant engages in conduct knowing it will present a likelihood of harm to a child, i.e., with an awareness of the potential for harm (see People v Hitchcock, 98 NY2d 586, 590-591 [2002]; People v Johnson, 95 NY2d 368, 372 [2000]; see also Penal Law § 15.05 [2]). Here, the information charging defendant with endangering the welfare of a child alleged that she
*39 “did knowingly act in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old when during an altercation defendant intentionally kick[ed] the victim, her 9-year-old daughter, in the head, causing the victim to suffer pain and bruising to her head.”
Thus, giving the information a fair and not overly restrictive or technical reading (see People v Casey, 95 NY2d 354, 360 [2000]), we find that it sufficiently alleged the charge and the factual basis thereof, thereby providing defendant enough notice to prepare a defense and avoid retrial for the same offense (see People v Konieczny, 2 NY3d 569, 575 [2004]; see also People v Best, 31 Misc 3d 141[A], 2011 NY Slip Op 50826[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; People v Vonancken, 27 Misc 3d 132[A], 2010 NY Slip Op 50695[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2010]). We further find that the evidence presented at trial was legally sufficient to establish defendant’s guilt of endangering the welfare óf a child.
Defendant also contends on appeal that the verdicts were against the weight of the evidence. In fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; Danielson, 9 NY3d 342), we accord great deference to the factfinder’s opportunity to view the witnesses, hear their testimony, and observe their demeanor (see People v Lane, 7 NY3d 888, 890 [2006]; People v Bleakley, 69 NY2d 490, 495 [1987]). Upon a review of the record, we find that the jury’s verdicts were supported by ample credible evidence (see People v Romero, 7 NY3d 633 [2006]; People v Mateo, 2 NY3d 383, 410 [2004]; Bleakley, 69 NY2d at 495).
Defendant further contends on appeal that her right to a fair trial was denied when the court allowed a crime victim advocate to comfort both of her children during their respective testimonies. A review of the record reveals that, while testifying, the victim became distraught and needed to take a break. However, after taking that break, she was able to complete her testimony, including cross-examination. Nevertheless, before her younger brother was called to testify, the prosecutor informed the court that a crime victim advocate, employed by the District Attorney’s Office, had been seated in the courtroom during the victim’s testimony. Defense counsel objected to the advocate’s presence, and the prosecutor responded by stating that the advocate was not coaching the witness and had never met the victim before that day. The court instructed the *40 prosecutor that the advocate was not permitted to coach the witness and that defense counsel would be permitted to voir dire the victim about the advocate. During this voir dire, which took place in the jury’s presence, the victim denied being familiar with the advocate, indicating that she had never spoken to the advocate before the trial and noting that, when they did speak briefly in the courthouse, they did not discuss the case whatsoever. Furthermore, the victim testified that she did not know why the advocate was present, that the advocate did not provide her with any assistance in any way, that the advocate did not gesture to her, and that she did not look a¿ the advocate while testifying. Before the victim’s brother testified, the prosecutor informed the court that the advocate was in the hallway, but would not enter the courtroom, and was available to comfort him should that become necessary. At the beginning of the victim’s brother’s direct examination, he became distraught and a recess was taken. After rejecting several suggestions made by the prosecutor, the court indicated that the advocate should speak with the victim’s brother to try to calm him down, and neither party objected. The court made it very clear to the advocate that she was not to discuss any testimony with him. Upon his return to the witness stand, the court noted, with the jury present, that it would allow the advocate to sit in the courtroom, and again neither party objected.
“New York courts have long held that a judge conducting a public trial is empowered to control the proceedings in whatever manner may be consistent with the demands of decorum and due process” (People v Tohom, 109 AD3d 253, 267 [2013]; see also People v Sorge, 301 NY 198, 202 [1950] [trial courts possess “wide latitude and . . . broad discretion ... to administer a trial effectively”]). Defendant’s contention pertaining to the crime victim advocate’s comforting of the victim’s brother is unpreserved for appellate review since, after the court indicated that it would allow him to speak with the advocate, upon the stipulation that they would not discuss his testimony, defense counsel did not register an objection. Nor did defense counsel object when the court told the jury that it would allow the advocate to sit in the courtroom while the victims brother testified. Further, with regard to the victim’s testimony, defendant has made no showing that the advocate’s presence had any “identifiable impact on the proceeding” (Tohom, 109 AD3d at 267). Thus, in addition to the statutory *41 basis afforded by Executive Law § 642-a, the District Court’s decision to allow the advocate into the courtroom during the victim’s testimony, and to comfort her while she was outside of the courtroom, was not an improper exercise of its inherent power and discretion to control the trial proceedings (see Tohom, 109 AD3d at 267 [affirming a defendant’s conviction where the trial court permitted a child witness to testify in the presence of a therapeutic “comfort dog” used to provide emotional support]; see generally Sexton v State, 529 So 2d 1041, 1044-1045 [Ala Ct Crim App 1988] [affirming a defendant’s conviction even though the prosecutor sat with the five-year-old victim as she testified, and explaining that the “trial judge was in the best position to determine what, if any, probable effect this action would have on the jury”]; People v Adams, 19 Cal App 4th 412, 437, 23 Cal Rptr 2d 512, 526 [1993] [“(t)he presence of a support person at the stand does not necessarily rob an accused of dignity or brand him or her with an unmistakable mark of guilt”]; Gonzalez v State, 310 Ga App 348, 714 SE2d 13 [2011] [trial court did not abuse its discretion by allowing a “victim-witness advocate” employed by the District Attorney’s Office to sit with the 14-year-old victim while she testified]).
Defendant’s contention that the People violated their disclosure obligations under Brady v Maryland (373 US 83 [1963]) by failing to disclose that they had allegedly induced defendant’s two children to testify against her by telling them that, if they did so, defendant would not go to jail, relies on factual assertions outside the record and, thus, cannot be reviewed on direct appeal (see People v Valdes, 66 AD3d 925 [2009]; People v Reyes, 60 AD3d 873 [2009]; People v Purdie, 50 AD3d 1065 [2008]; People v Williams, 43 AD3d 729 [2007]).
To the extent that defendant’s claims of ineffective assistance of counsel are predicated on matters dehors the record, we cannot review them. With regard to defendant’s claim of her counsel’s general failure to make proper objections, “counsel’s efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective” (People v Benevento, 91 NY2d 708, 712 [1998]), and mere disagreement with strategies or tactics will not suffice to establish a claim of ineffective assistance of counsel (see People v Benn, 68 NY2d 941, 942 [1986]). With regard to the remainder of defendant’s ineffective assistance claims which can be reviewed on direct appeal, we find that defendant has failed to *42 demonstrate that she was deprived of the effective assistance of counsel under either the federal standard (Strickland v Washington, 466 US 668, 694 [1984]) or the New York State standard (Benevento, 91 NY2d 708; People v Baldi, 54 NY2d 137 [1981]).
We have considered defendant’s remaining contentions and find them to be without merit.
Accordingly, the judgments of conviction are affirmed.
Maraño, P.J., Iannacci and Garguelo, JJ., concur.