A03A0513. AVELLANEDA v. THE STATE.
(581 SE2d 701)

ELLINGTON, Judge.

A Gwinnett County jury convicted Emilio Avellaneda of trafficking in cocaine, OCGA § 16-13-31 (a), and two counts of possession of a firearm during the commission of a felony, OCGA § 16-11-106. He appeals, contending the trial court violated his constitutional rights when, after severing his trial from that of his co-defendant, Norberto

Ramirez Cancino, the court refused to compel the State to take Cancino to trial first. For the reasons that follow, we affirm.

Viewed in the light most favorable to support the jury's verdict,[1] the record shows that a confidential informant ("CI") approached Gwinnett County Drug Task Force officers with information about a suspected drug dealer, Avellaneda. The CI referred to Avellaneda as "Amigo," had known Avellaneda for at least eight months, and had been to Avellaneda's apartment. In August 2000, the CI contacted Avellaneda and arranged a controlled purchase of two kilograms of cocaine for $50,000. Avellaneda instructed the CI to meet him in the parking lot of a Gwinnett County shopping center. Avellaneda drove his truck to the lot and paged the CI twice. Cancino was a passenger in Avellaneda's truck. The CI testified that he had met Cancino through Avellaneda and had only seen him once or twice over the two months before the controlled buy.

The CI and undercover officers drove to the shopping center, and, as they pulled into the parking lot, Avellaneda flashed his lights at them. They pulled alongside the truck, and the CI got into the back seat of the truck, sitting behind Cancino. The CI asked Avellaneda where the drugs were, and Avellaneda said, "Give me the money." The CI responded that he wanted his "buddy" in the other car to check out the cocaine. Avellaneda talked with Cancino in Spanish for a moment, and then Avellaneda handed the CI a bag containing two packages of cocaine, 1,002 grams each with individual purities of 76 and 77 percent. The CI got out of the truck with the cocaine and walked back to the car. Cancino also got out of the truck and walked toward the car. The undercover officer who had been driving the car checked to ensure the bag contained cocaine, and then got out of the car and approached the truck. He told Avellaneda and Cancino that the cocaine looked fine and suggested that they "do some future deals." Both defendants responded by nodding at the suggestion. The officer then walked to the back of the car and pretended to get the money. At that time, the officer gave a "take down" signal and supporting officers drove up to make an arrest. The officers wore black t-shirts and vests with large white or yellow letters spelling "POLICE." They identified themselves as police officers as they approached Avellaneda, who was still seated in the truck. Avellaneda started "scrambling," obviously trying to pull a weapon from his waistband. The officers ordered Avellaneda to put his hands up, but Avellaneda continued to reach for his weapon. Finally, the officers "extracted" Avellaneda from the truck and handcuffed him. They

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

found a loaded .380 semi-automatic pistol in Avellaneda's waistband, as well as a loaded .357 revolver hidden beneath Cancino's shirt.

In a single indictment, the State charged Avellaneda and Cancino with trafficking in cocaine and firearm violations. Avellaneda filed a demand for speedy trial, but Cancino did not. Avellaneda also moved for a severance, contending that Cancino would provide exculpatory testimony that would be unavailable if they were jointly tried. According to Avellaneda's counsel, Cancino's testimony would be that Avellaneda had no knowledge of Cancino's drug involvement and was merely present during the August 2000 controlled buy. Avellaneda's counsel also stressed that Cancino would only testify on behalf of Avellaneda if the cases were severed and Cancino was tried first. If the cases were not severed, he warned, Cancino would invoke his Fifth Amendment privilege and would not give any testimony that might later be used to incriminate him at his trial.

The trial court conducted a hearing in January 2001 on the motion to sever. When the trial court asked specifically what exculpatory testimony Cancino intended to provide, Avellaneda's counsel refused to elaborate, saying that he did not want to make such a showing in the presence of the State.[2] Cancino's counsel admitted that it was "unlikely" his client would testify at a joint trial, that he did not know the substance of Cancino's allegedly exculpatory testimony, and that he could not represent to the court that such testimony would meet the requirements to justify a severance. Cancino did not testify or provide an affidavit regarding his offer to exculpate Avellaneda.

Noting that Avellaneda had filed a speedy trial demand, the State informed the court that it intended to try Avellaneda first if the cases were severed. Avellaneda then withdrew his speedy trial demand. The trial court recognized that, even if he granted the severance motion, the State could still decide to try Avellaneda first. The trial court postponed a ruling on the severance motion until trial.

Immediately prior to the trial, the trial court again heard arguments regarding severance. When the State reiterated that it intended to try Avellaneda first if the cases were severed, Cancino's counsel argued that such arrangement would make severance "a nullity," because Cancino would exercise his Fifth Amendment rights if called as a witness, which would still deny Avellaneda the benefit of Cancino's testimony. Both defense counsel repeatedly reiterated that Cancino would not testify for Avellaneda unless the trials were sev-

---

[2] Avellaneda's counsel offered to provide more details if the court would meet with him ex parte. After the State objected to the arrangement, the court rejected Avellaneda's offer.

ered and Cancino was tried first. The court granted the severance motion, but refused to compel the State to try Cancino first. The State proceeded to trial against Avellaneda.

After the State presented its case-in-chief, Avellaneda attempted to call Cancino, whom he had subpoenaed, to the stand. Outside the presence of the jury, Cancino exercised his Fifth Amendment right not to incriminate himself. His attorney stated that Cancino refused to answer any questions on *any* contested issue in this case in front of the jury, "even to the point of whether he knows Mr. Avellaneda."

Shortly thereafter, Avellaneda took the stand and denied that he ever sold drugs, ever met the CI, or ever saw the bag containing the cocaine. He denied having any knowledge that a drug deal had been planned, implying that Cancino must have arranged the deal. The State called the CI in rebuttal, who testified that he knew Avellaneda as an "ex-drug dealer" because he had purchased cocaine from Avellaneda prior to the August 2000 controlled buy. The jury convicted Avellaneda on all counts, and he appeals.

The sole issue on appeal is whether the trial court violated Avellaneda's constitutional rights to a fair trial and to present witnesses for his defense[3] by refusing to compel the State to try Cancino first. Avellaneda relies upon his claim that, if Cancino's case had been tried first, Cancino would have provided exculpatory testimony at Avellaneda's trial. We find that Avellaneda has failed to demonstrate that he was prejudiced by the order of the trials.

Under OCGA § 17-8-4, when the trial court grants a severance motion, "the defendants shall be tried in the order requested by the [S]tate." The State has the sole authority to decide the order in which to try co-defendants as long as it does not result in actual prejudice to their rights to a fair trial.[4] *House v. State*, 203 Ga. App. 55 (416 SE2d 108) (1992); *Dixon v. State*, 12 Ga. App. 17 (76 SE 794) (1912); see also *United States v. DiBernardo*, 880 F2d 1216, 1229 (11th Cir. 1989) ("among severed co-defendants, there is no absolute right to be tried in a certain order; each case must be evaluated on its own facts") (citation omitted). Clearly, in this case, the State was within its statutory authority to proceed to trial against Avellaneda first. The only remaining question, then, is whether Avellaneda was preju-

---

[3] "It is well-established that defendants have a Fifth and Sixth Amendment right to present witnesses that are both material and favorable to their defense." (Citations and punctuation omitted.) *Taylor v. Singletary*, 122 F3d 1390, 1394 (II) (11th Cir. 1997).

[4] On this issue, the federal case law relied upon by Avellaneda is distinguishable from the instant case. In the federal courts, the decision regarding the order in which cases are tried after severance is left to the discretion of the trial court, not the prosecution. *United States v. DiBernardo*, 880 F2d 1216, 1218 (11th Cir. 1989); *Byrd v. Wainwright*, 428 F2d 1017, 1022 (5th Cir. 1970).

diced by the trial court's refusal to compel the State to try Cancino first.

As Avellaneda argues, Cancino was adamant that he would not testify on behalf of Avellaneda if they were tried jointly or if Avellaneda was tried first. Avellaneda contends, therefore, that the State's decision to take his case to trial first renders the trial court's severance meaningless, as if the severance had never been granted.[5] We find that Avellaneda's argument has some merit. Accordingly, in order to evaluate whether Avellaneda was prejudiced by the State's decision to try him first, we will use the same analysis we would have used if the trial court had denied his motion to sever.[6]

A trial court should sever the trials of co-defendants whenever it is necessary to achieve a fair determination of the guilt or innocence of a defendant. *Cain v. State*, 235 Ga. 128 (218 SE2d 856) (1975). Whether to grant or deny a severance should be decided on a case-by-case basis and is an issue that is left to the discretion of the trial court. Id. at 128-129. The trial court's decision will not be reversed absent an abuse of discretion. Id. In order to be entitled to a severance, "the burden is on the defendant . . . to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Citations omitted.) Id. at 129. The simple fact that a defendant desires the testimony of a co-defendant which might be unavailable at a joint trial is not enough to require severance, absent a showing of prejudice to the defendant. *Stevens v. State*, 165 Ga. App. 814, 817 (3) (302 SE2d 724) (1983). In fact, as a threshold matter, when the defendant requests a severance under these circumstances, the defendant must prove: "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant will in fact testify if the cases are severed." (Citation and punctuation omitted.) *Keener v. State*, 215 Ga. App. 117, 118 (1) (449 SE2d 669) (1994).

When reviewing the record as it appeared when the trial court granted the motion to sever and the State declared its intention to try Avellaneda first,[7] we find that Avellaneda has failed to demonstrate the substance of Cancino's proposed testimony or that it is

---

[5] See *United States v. DiBernardo*, 880 F2d at 1227 (the trial court's decision to try defendant first constituted a "de facto" denial of his motion for severance, which had been based upon defendant's need for co-defendant's testimony).

[6] See *Taylor v. Singletary*, 122 F3d at 1393 (II) (holding that "[b]ecause the sequence of trials can effectively preclude a defendant from calling a codefendant to testify on his behalf in the same way that a denial for severance can, the standards for reviewing denials of severance provide useful guidance in reviewing a denial for a particular trial order") (citations omitted).

[7] *Byrd v. Wainwright*, 428 F2d at 1018.

more likely Cancino would testify on behalf of Avellaneda if the cases were severed. See *Byrd v. Wainwright*, 428 F2d 1017, 1020 (5th Cir. 1970) (defendant must make a clear showing of what the co-defendant would testify to). Avellaneda presented no evidence, such as an affidavit or prior recorded statement by Cancino, that made a clear showing of the substance of Cancino's testimony, that such testimony would, in fact, be exculpatory of Avellaneda, or of Cancino's willingness to testify on behalf of Avellaneda.[8] See *Keener v. State*, 215 Ga. App. at 118 (1) (defendant presented no affidavit or other evidence that the co-defendant would, in fact, testify at his trial if the cases were severed); cf. *Taylor v. Singletary*, 122 F3d 1390, 1393 (11th Cir. 1997) (co-defendant gave a signed affidavit indicating his willingness to provide exculpatory evidence on defendant's behalf); *United States v. DiBernardo*, 880 F2d at 1219, 1228 (co-defendant gave an affidavit that incriminated himself and "demonstrated the substance of his testimony, its exculpatory nature and effect, and his willingness to testify"); *Byrd v. Wainwright*, 428 F2d at 1020 (co-defendant's confession, which was exculpatory for defendant, was on record).

Further, Avellaneda cannot show that severance would make it more likely that Cancino would, in fact, testify on his behalf. Cancino's offer to testify was entirely conditioned upon the order of the trials. See *United States v. Funt*, 896 F2d 1288, 1298 (11th Cir. 1990) (defendant failed to show that co-defendant would testify on his behalf, when such testimony was conditioned upon co-defendant's being tried first after the cases were severed); *United States v. Broussard*, 80 F3d 1025, 1038 (III) (B) (5th Cir. 1996) (accord); cf. *United States v. Cobb*, 185 F3d 1193, 1198-1199 (11th Cir. 1999) (no evidence that co-defendant's exculpatory testimony was contingent upon the order of the trials).

> Severance is not required when the co-defendant would testify only if his case came first. Were we to accede to the co-defendant's demand, we would create a situation where, following his own trial, the witness would be more inclined to "throw a bone" to his co-defendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying. The [fourth] prong of the [severance] test is not satisfied where a co-defendant places condi-

---

[8] Although Avellaneda attempted to present the affidavit and testimony of a third party to prove the substance of Cancino's testimony, the trial court properly refused to admit it as it was based solely upon hearsay. Further, this Court does not consider statements made during Cancino's guilty plea hearing, because it occurred four months after Avellaneda's conviction, well after the trial court and State decided the issues of severance and trial order.

tions on his willingness to testify. [Cancino] never offered to testify irrespective of the order in which he and [Avellaneda] were tried. We will not grant a severance when doing so would allow co-defendants to obtain benefits that they would not have but for their joint indictment.

(Citations and punctuation omitted.) *United States v. Reavis*, 48 F3d 763, 767 (II) (A) (4th Cir. 1995), cited by *United States v. Cobb*, 185 F3d at 1199. See also *Mack v. Peters*, 80 F3d 230, 235 (II) (B) (7th Cir. 1996) (a conditional offer to testify by a co-defendant does not give the defendant a right to control trial sequence); *United States v. Broussard*, 80 F3d at 1038 (III) (B) ("co-conspirators should not be allowed to control the order in which they are tried") (citation omitted). Frankly, we cannot dismiss the strong possibility that, if Cancino had been tried first, he may have decided to shift the responsibility for the crimes to Avellaneda, either by taking the stand in his own defense or through counsel's argument to the jury, particularly in light of the extremely compelling evidence in this case against both defendants and the fact that there was no third party upon whom to place the blame. Even the trial court expressed doubts as to whether Cancino would actually testify for Avellaneda, recognizing that, if Cancino had been tried first and convicted, he may have been unwilling to testify for Avellaneda if he thought his conviction might be reversed on appeal. In fact, the court stated that "any number of circumstances" could have occurred that might have caused the defendants to change their minds about who would testify for whom, and it cautioned that the defendants could not "assume" anything about potential testimony based upon which defendant was tried first. Therefore, Avellaneda failed to carry his burden of demonstrating that it was more likely Cancino would testify on his behalf if tried first. See *Byrd v. Wainwright*, 428 F2d at 1022 (severance is not required when there is merely an unsupported possibility that exculpatory testimony might be forthcoming).

Finally, given the exceptionally strong evidence of Avellaneda's active direction of and participation in this drug deal, from which Avellaneda's knowledge and intent could be inferred, as well as the jury's wholesale rejection of Avellaneda's version of the events that transpired, it is unlikely Cancino's potential testimony would have changed the outcome of the trial. See *Keener v. State*, 215 Ga. App. at 118 (1) (defendant was not prejudiced by court's refusal to sever when co-defendant's potential testimony would have been "wholly lacking in credibility"); cf. *Taylor v. Singletary*, 122 F3d at 1396 (co-defendant's potential testimony that another man committed the crime, and that defendant was not present when crime took place,

was material to the defense and could have changed the outcome of the trial).

We find that, since Avellaneda failed to make the requisite threshold showings that entitled him to a separate trial following the disposition of Cancino's case, he has not demonstrated actual prejudice that would entitle him to a new trial.

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED APRIL 30, 2003 —

*Herbert Shafer*, for appellant.
*Daniel J. Porter, District Attorney, Peter H. Boehm, Assistant District Attorney*, for appellee.