## A10A1907. BILLINGS v. THE STATE.

(707 SE2d 177)

SMITH, Presiding Judge.

Arkelia Billings was convicted of cruelty to children, two counts of family violence terroristic threats, two counts of family violence battery, and one count of cruelty to children in the third degree. His amended motion for new trial was denied, and he appeals, asserting four enumerations of error. We find no reversible error and affirm.

1. Billings first complains that the trial court erred in refusing to excuse a juror for cause. During voir dire, the juror, an employee of

an insurance company, testified that she had spoken to the prosecutor "a few times." The voir dire examination does not reveal the exact nature of the juror's dealings with the district attorney's office, beyond that the juror provided some information to the prosecutor involving restitution and trial dates. Although Billings argues that, *if* these cases involve the collection of restitution payable to the insurer, it would benefit the juror's employer, no evidence was presented to that effect. Nothing indicates that the juror was involved in the case before us.

Billings contends that the juror had an "ongoing business relationship with the District Attorney's Office" that precluded her from serving on the jury. He relies on *Daniel v. Bi-Lo*, 178 Ga. App. 849 (344 SE2d 707) (1986), a civil action in which we held that "a person is not competent to serve as a juror in a cause when there exists any business relation between himself and one of the parties which may tend to influence the verdict." (Citation and punctuation omitted.) Id. at 850 (1). The definition of a business relation includes "parties who, although not named in the suit, have a financial or other interest in the outcome of the litigation to be tried . . . whereby the juror could be motivated by financial concerns affirmatively or negatively towards a party interested in the outcome of a suit." (Citations and punctuation omitted.) Id. at 850-851 (1). That reasoning is not applicable here.

In *Daniel*, the juror, an insurance adjuster, worked for several insurers who, while not named as parties, insured the defendants in the civil litigation. Noting that "[a]n insurance adjuster's livelihood is dependent upon the assignments received from insurance companies such as those defending appellees in the instant suit," id. at 851 (1), we concluded that the juror had a pecuniary interest in the result of the case and found that the trial court erred in refusing to disqualify the juror for cause. Id. at 852 (1).

The case before us, in contrast, is a criminal prosecution in which the juror's employer is neither a party nor a representative of a party. In this, it more closely resembles *Berry v. State*, 302 Ga. App. 31 (1) (690 SE2d 428) (2010), in which a juror worked as a consultant for the district attorney's office. We concluded that a person with an ongoing business relationship with the district attorney is not a "party at interest," and that a per se rule with regard to mere business relations is inappropriate. Id. at 34 (1). We therefore looked to the juror's responses to voir dire and found no abuse of discretion by the trial court in declining to strike the juror for cause. Id. at 34-35 (1).

"The decision to strike a juror for cause lies within the sound discretion of the trial court." (Citation and punctuation omitted.) *Berry*, supra at 31. The juror testified that she would not give more weight or credibility to the prosecutor because of an ongoing work

relationship; she also testified that she could decide the case fairly and impartially based solely on the evidence and the law. The trial court therefore did not err in declining to strike this juror for cause.

2. Billings contends the trial court erred in denying his third motion for continuance.

> A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere unless it is clearly shown that the court abused its discretion. The trial judge, in the exercise of his discretion to grant or refuse a continuance, has to consider the facts and circumstances of each case to determine what the ends of justice require. Broad discretion must be granted trial courts on matters of continuances.

(Citation and punctuation omitted.) *Westmoreland v. State*, 281 Ga. App. 497, 498 (1) (636 SE2d 692) (2006).

Billings had already filed two motions for a continuance, and he obtained both. The second motion for continuance was granted ten days before Billings's third motion for a continuance was made and jury selection began. Billings's primary complaint in his first motion was that his attorney had insufficient time to contact various witnesses or to prepare his defense. In his second motion, Billings enumerated many of the same grounds later urged in his third motion, as well as complaining of his inability to obtain GCIC records in time for trial. But, according to the State, some of the witnesses could not be located, some did not want to speak to Billings's counsel, some of the information sought was provided earlier in discovery material, and some was not admissible at trial.

Seven days after receiving the second continuance, Billings moved to dismiss on speedy trial grounds.[1] During jury selection, Billings filed a motion to recuse the trial judge, which was denied. Immediately before the jury was sworn, Billings's counsel asked for a delay because his client was considering entering a guilty plea, and the trial court gave Billings ten minutes to discuss the matter with his counsel. After the recess, Billings attempted to file a pro se "Motion to Quash Indictment and Challenge the Composition of the Grand and Petit Juries" which the trial court declined to consider because Billings was represented by counsel. As noted in Division 3, below, Billings's counsel also sought to withdraw.

A party must show due diligence in applying for a continuance. *Westmoreland*, supra at 498. Moreover, a denial of continuance is

---

[1] That motion was withdrawn at the time of Billings's third motion for continuance.

authorized when it appears that it was sought for purposes of delay. *Gipson v. State*, 297 Ga. App. 413, 415-416 (2) (677 SE2d 431) (2009). Under the circumstances presented here, we cannot say that the trial court abused its discretion in denying a third motion for continuance.

3. Billings next complains that the trial court erred in denying his counsel's motion to withdraw from representation, contending that the record shows "irreconcilable conflict and complete breakdown in the attorney-client relationship."

> The Sixth Amendment guarantees effective assistance of counsel, not preferred counsel or counsel with whom a meaningful relationship can be established. An indigent defendant is not entitled to have his appointed counsel discharged unless he can demonstrate justifiable dissatisfaction with counsel, such as conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between counsel and client. Where a defendant does not have a good reason for discharging his court-appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se. We evaluate a trial court's decision regarding whether to appoint new trial counsel for an indigent defendant under an abuse of discretion standard.

(Citations, punctuation and footnotes omitted.) *Holsey v. State*, 291 Ga. App. 216, 218-219 (2) (661 SE2d 621) (2008).

As trial began, Billings through his counsel moved for a continuance, which was denied. Billings then told the court that he was dissatisfied with his counsel, believing that he had not spent sufficient time to prepare his case. The trial court informed him that his dissatisfaction was not necessarily sufficient grounds to continue the case, and that he could proceed pro se or with trial counsel. At that point, Billings asserted that trial counsel had threatened him. The trial court asked for more information regarding the alleged threats, and Billings was unable to provide specific information other than that he believed that trial counsel "wasn't going to help me" and had not spent enough time on his case. After a recess, Billings's counsel moved to withdraw on the ground that "Billings has come into this court and made serious allegations and accusations against me. Accusations which I do not take quietly. . . . I have not in any way ever threatened Mr. Billings. I've not in any way . . . failed to investigate any leads." The trial court then took a recess in order to investigate the issue.

The trial court engaged in a lengthy colloquy with the prosecu-

tor, Billings, and Billings's counsel, then excused everyone from the courtroom, including counsel, so that the court could examine Billings privately. Even then, Billings was unable to articulate anything other than that trial counsel "made me feel uncomfortable . . . the way he gave that D.A. a look and the way he was walking," that counsel would not look him in the eye, and that counsel "just copped an attitude with me." The trial court repeatedly pressed him for more information on the alleged threats, but Billings was unable to identify a specific threat beyond his dissatisfaction with trial counsel's tone and "the way he said it to me. Like he really don't care." He reiterated that he believed counsel needed more time to prepare the case.

After hearing from Billings and calling counsel back into the courtroom, the trial court ruled as follows:

> While the court has some sympathy for [trial counsel], my questioning of this issue of the threat leads me to the conclusion that the things that he said to you were not — not threats of any nature, other than statements about the possible consequences that you face in this case, and you don't like — you don't like that.

> You didn't — didn't appreciate what I can only hear as, you know, candor on his part. In other words, he was shooting straight with you. And you would have rather had him give you a pep talk.

> That's not a basis for a conflict of interest or allowing him to withdraw.

The trial court gave Billings the option of proceeding pro se, which Billings declined, repeating that "if he's going to be my lawyer, he needs more time to work on this case." When asked if he was "not necessarily dissatisfied with [trial counsel], you just want more time?" Billings responded, "Because . . . there's a lot of stuff he ain't done to help me in my case." The trial court denied Billings's request for continuance and counsel's motion to withdraw.

In *Bryant v. State*, 268 Ga. 616, 617 (2) (491 SE2d 320) (1997), the Georgia Supreme Court concluded that mere "vague complaints" about counsel, unsupported by any showing of "justifiable dissatisfaction," would not support a finding that the trial court abused its discretion in finding that an attempt to discharge counsel was a dilatory tactic. Here, Billings was unable to articulate any support for his claim of threats, beyond stating repeatedly his belief that counsel needed more time.

Given these circumstances and the trial court's commendable and thorough investigation of the allegations, it did not abuse its discretion in giving Billings the option of proceeding pro se and denying the motion to withdraw. *Bryant*, supra; *Holsey*, supra; *Johnson v. State*, 283 Ga. App. 524, 529 (5) (642 SE2d 170) (2007) (disagreement between defense counsel and appellant "causing tension in their relationship" did not require grant of counsel's motion to withdraw on basis that appellant "was angry" and "had lost confidence in him").

4. Finally, Billings asserts ineffective assistance of trial counsel. He contends that counsel was ineffective in failing to seek a mistrial after successfully objecting to a witness's testimony that Billings told her that "he would have a shoot-out with police before he ever went back to jail." He contends this response placed his character in evidence by suggesting both that he had previously been incarcerated and "that he intended to use deadly force on law enforcement officers." Billings contends the testimony was so prejudicial that, even though counsel's objection was sustained, failure to move for a mistrial constituted ineffective assistance of counsel. We disagree.

With respect to Billings's first contention, "even if counsel's failure to request a mistrial were deemed deficient, no mistrial would have been granted as a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue." (Citations and punctuation omitted.) *Hinely v. State*, 275 Ga. 777, 782 (2) (d) (573 SE2d 66) (2002). "[A] nonresponsive answer that impacts negatively on a defendant's character does not improperly place his character in issue [cits.]" *Lewis v. State*, 287 Ga. 210, 212 (2) (695 SE2d 224) (2010), and a "passing reference to a defendant's incarceration" therefore does not put his character in evidence. Id. at 212 (3).

With respect to the second contention, another witness had already testified without objection that she did not call the police on another occasion because Billings had told her "if the cops came he would come out shooting." "Where certain evidence is admitted over objection, but similar evidence to the same effect is admitted without objection, the admission of the evidence objected to will not constitute reversible error, even if the admission of the evidence was erroneous." (Citations and punctuation omitted.) *State v. Rigdon*, 284 Ga. App. 785, 787 (645 SE2d 17) (2007).

Since "failure to pursue a futile motion does not constitute ineffective assistance," *Rose v. State*, 263 Ga. App. 263, 264 (1) (b) (587 SE2d 326) (2003), Billings has failed to establish a claim of ineffective assistance of counsel.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 8, 2011.

*H. Maddox Kilgore*, for appellant.

*Garry T. Moss, District Attorney, Lara A. Snow, Cliff Head, Assistant District Attorneys*, for appellee.