**FOURTH DIVISION**
**DILLARD, C. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 12, 2018**

# In the Court of Appeals of Georgia

A17A1804. CUYLER v. THE STATE.

DILLARD, Chief Judge.

Willie Cuyler appeals his convictions for attempted armed robbery, aggravated assault, first-degree burglary, and related weapons charges, arguing that the trial court erred by denying his motion to sever his trial from that of a co-defendant, failing to grant a mistrial or to give an adequate curative instruction when the victim improperly commented on Cuyler's character, and failing to merge his attempted armed-robbery and aggravated-assault convictions for sentencing purposes. He also contends that his trial counsel was ineffective for failing to move for a mistrial when the State presented improper character evidence and failing to call certain witnesses to testify in his defense. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that on August 21, 2013, at approximately 11:40 p.m., a patrol officer with the Richmond County Sheriff's Department responded to a residence where shots had reportedly been fired and one person was "down." When the officer arrived, he noticed that the front door of the apartment had been kicked in, and there was blood on the ground. The officer walked into the apartment, where he found Marco Gilbert lying on a sofa "holding some gunshot wounds." But Gilbert was "fully alert and conscious" and able to tell the officer what happened. The officer observed that Gilbert had been shot a couple of times in his abdomen and once in his leg. Shortly thereafter, Gilbert was taken to a hospital for treatment and additional officers arrived on the scene to investigate. In the few minutes before the ambulance arrived, Gilbert told the officer that Andre Brown was one of his attackers and the other perpetrator (later identified as Cuyler) went by the nickname "Main-Main."[2]

---

[1] *See, e.g.*, *Hartzler v. State*, 332 Ga. App. 674, 675 (774 SE2d 738) (2015).

[2] At trial, Gilbert identified Cuyler and Brown as his assailants, and Cuyler confirmed that people knew him as "Main-Main."

According to Gilbert, he had recently moved into the apartment with a friend, who was also Cuyler's cousin. Gilbert knew Cuyler because they played pool and had drinks together a few times, but Gilbert did not know him well. Gilbert had, however, known Brown and his family since childhood. And on the night in question, Gilbert was home alone watching a movie when he "heard a loud kick at [his] door[,]" which caused the door to begin coming off of its hinges. Gilbert looked toward the door and saw Cuyler standing in the doorway. When Cuyler kicked the door a second time, it flew open, and Gilbert, who attempted to run away, heard gunshots being fired inside the home. Then, after the gunshots stopped, Gilbert saw that Cuyler was still standing in the doorway, and he asked Cuyler, "this how y'all gonna play it, brother?" Cuyler then told Gilbert to "give it up" and began shooting at him again.[3] Cuyler ran toward Gilbert and attempted to grab him, but Gilbert was able to escape through the front door.

---

[3] Gilbert testified that he had approximately $800 in his pocket at the time of the attempted robbery, but Cuyler and Brown did not steal it. He further testified that he had sold drugs in the past, so when Cuyler told him to "give it up[,]" Gilbert believed that Cuyler was demanding money, drugs, or any other valuable items in the home.

Then Brown, who was waiting just outside the door, tripped Gilbert, causing him to fall on the ground. Brown jumped on top of Gilbert, pointed a gun at him, and repeatedly attempted to pull his pants down. Although Gilbert was eventually able to stand and start running away, he stumbled and fell again. Brown followed Gilbert, stood over him, shot him twice in the stomach, and then ran from the scene. By this time, Cuyler had also fled. In total, Gilbert was shot five times during the home invasion.

Following the attack, Cuyler and Brown were charged, via indictment, with attempted armed robbery, aggravated assault, first-degree burglary, and related weapons charges. Prior to trial, Cuyler moved to sever his trial from that of Brown's, but after a hearing on the matter, the motion was denied. Subsequently, Cuyler and Brown proceeded to a joint jury trial and were both convicted of all charged offenses. Cuyler then filed a motion for a new trial, which was denied following a hearing. This appeal by Cuyler follows.[4]

---

[4] A review of this Court's docket reveals that Brown does not currently have a separate appeal from his convictions pending before this Court and he is not a party to this appeal.

1. Cuyler first argues that the trial court erred in denying his motion for a severance because there was confusion as to the evidence and the law applicable to each defendant and he and Brown had antagonistic defenses.[5] We disagree.

OCGA § 17-8-4 (a) provides that when two or more defendants are jointly indicted for a non-capital offense, "such defendants may be tried jointly or separately in the discretion of the trial court." And a trial court's decision to deny a motion to sever "will be affirmed absent an abuse of discretion."[6] Nevertheless, a trial court

---

[5] The vast majority of the "argument and citation of authority" section in Cuyler's appellate brief provides no citations to support his representations of the record, including some instances when he purports to quote the trial transcript. It is not the function of this Court to "cull the record on behalf of a party in search of instances of error[,] [and] [t]he burden is upon the party alleging error to show it affirmatively in the record." *Patterson v. State*, 327 Ga. App. 695, 696 (1) (761 SE2d 101) (2014) (punctuation omitted). Nevertheless, given the limited and straightforward nature of the evidence presented at trial and the citations provided by the State, we address the substance of Cuyler's claims to the extent possible. *See id.* (noting that the deficiencies in the appellant's brief would authorize this Court to dismiss the appeal, but addressing the merits of the appeal to the extent possible, as the State had provided sufficient citations to the record in its brief); Court of Appeals Rule 25 (c) (2) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of specific reference, the Court will not search for and may not consider that enumeration."). Additionally, we caution the State that, when filing future briefs with this Court, it should consult Court of Appeals Rules 2 and 24, which detail the format in which appellate briefs must be prepared.

[6] *Jones v. State*, 277 Ga. App. 185, 186 (626 SE2d 142) (2006); *see Cain v. State*, 235 Ga. 128, 128-29 (218 SE2d 856) (1975) ("Since the grant or denial of a

5

should sever the trials of co-defendants whenever it is "necessary to achieve a fair determination of the guilt or innocence of a defendant."[7] But in order to show entitlement to a severance, "the burden is on the defendant to do more than raise the possibility that a separate trial would give him a better chance of acquittal."[8] Indeed, to satisfy this burden, a defendant "must make a clear showing of prejudice and a consequent denial of due process."[9] Finally, as our Supreme Court has explained, in determining whether to grant a motion to sever, a trial court should consider:

---

motion to sever is left to the discretion of the trial court, its ruling will be overturned only for an abuse of discretion."); *Avellaneda v. State*, 261 Ga. App. 83, 87 (581 SE2d 701) (2003) ("Whether to grant or deny a severance should be decided on a case-by-case basis and is an issue that is left to the discretion of the trial court.").

[7] *Avellaneda*, 261 Ga. App. at 87; *see Morris v. State*, 204 Ga. App. 437, 438 (1) (419 SE2d 733) (1992) ("Despite the benefits of joinder, it is clear that an accused's right to a fair trial takes precedence. If the consolidation of defendants at trial hinders a fair determination of each defendant's guilt or innocence, then the defendants must be tried separately." (punctuation omitted)).

[8] *Avellaneda*, 261 Ga. App. at 87 (punctuation omitted); *accord Cain*, 235 Ga. at 129.

[9] *Avellaneda*, 261 Ga. App. at 87 (punctuation omitted); *see Green v. State*, 274 Ga. 686, 688 (2) (558 SE2d 707) (2002) ("It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed.").

(1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process.[10]

Bearing these guiding principles in mind, we turn now to Cuyler's specific claim.

As to whether the number of defendants is potentially confusing to the jury as to the evidence and the law, our Supreme Court has held that "[m]erely because *three* defendants are tried together is not cause for a severance."[11] And here, there were only two defendants tried together, and Cuyler fails to explain how trying him and Brown together could have confused the jury, especially given that the jury heard testimony regarding a relatively brief and straightforward attempted robbery and the assault of a single victim.[12] Indeed, as the co-defendants were alleged to have acted

---

[10] *McClendon v. State*, 299 Ga. 611, 615 (3) (791 SE2d 69) (2016); *accord Satterfield v. State*, 256 Ga. 593, 596 (3) (351 SE2d 625) (1987).

[11] *Green*, 274 Ga. at 688 (2) (emphasis supplied); *see Satterfield*, 256 Ga. at 596-97 (3) (affirming the trial court's denial of defendants motions to sever when there were three co-defendants and the two who sought a severance failed to show the requisite prejudice to require reversal).

[12] *See, e.g.*, *Butler v. State*, 290 Ga. 412, 413 (2) (721 SE2d 876) (2012) (holding that severance of the co-defendants' trials was not warranted when "[t]here

7

in concert to commit the same crimes on a single occasion, and the evidence and law applicable to each defendant was essentially the same, it is unlikely that trying them together confused the jury.[13]

As to whether evidence against one defendant is admissible against the other, Cuyler maintains that he was entitled to a severance because the State presented evidence that Brown committed another robbery two months prior to the attempted robbery of Gilbert. Specifically, Cuyler contends that there was a danger that the jury would improperly consider evidence of that recent, similar robbery against him. But

---

were only two defendants . . ., the law applicable to each defendant was substantially the same, and the evidence at trial showed that [a]ppellant and [his co-defendant] acted together in committing the jointly indicted crimes" (punctuation omitted)); *Ray v. State*, 338 Ga. App. 822, 829 (2) (792 SE2d 421) (2016) (holding that severance of the co-defendants' trials was not necessary given that, *inter alia*, evidence showed that all of the defendants played a role in a single robbery, not separate, unrelated offenses that might "muddy the evidence" as to a single defendant's offenses).

[13] *See, e.g.*, *McClendon* , 299 Ga. at 615 (3) (affirming the trial court's denial of a defendant's motion for a severance, explaining that, *inter alia*, there was no indication that the jury confused the evidence or the law applicable to the co-defendants as all three defendants were largely charged with the same offenses that stemmed from the same evidence and fact pattern); *Daniel v. State*, 285 Ga. 406, 409 (3) (d) (677 SE2d 120) (2009) (holding that there was no danger that the jury would be confused by the evidence because there were only two defendants acting in concert and the evidence was not such that it would confuse the jury as to their individual participation in the crimes).

the mere fact that the case against Brown was stronger than the case against Cuyler did not necessitate a separate trial.[14] Moreover, the trial court gave limiting instructions to the jury that mitigated any chance it would convict either defendant based on evidence against or association with the other. Indeed, just prior to the State presenting similar-transaction evidence against Brown, the court instructed that "[s]ometimes the evidence is admitted for a limited purpose or against some parties and not others. Such evidence may be considered by you, the jury, for the sole issue or purpose against that party for which the evidence is limited and not for other purposes." The court went on to explain that the State would be presenting evidence of other acts allegedly committed by *Brown*, and such evidence could be considered solely as to the issues of *Brown's* motive, intent, and plan.

Additionally, after each witness who testified regarding Brown's prior criminal acts, Cuyler's attorney cross-examined the witness briefly only to confirm that Cuyler had no involvement in those prior incidents or that the witness did not know Cuyler.

---

[14] *See Kelley v. State*, 248 Ga. 133, 136 (3) (281 SE2d 589) (1981); *see also Martin v. State*, 162 Ga. App. 703, 704 (2) (292 SE2d 864) (1982) ("The mere fact that testimony as to one of two co[-]defendants is stronger than that linking the other to the crime does not demand a finding that the denial of a motion to sever is an abuse of discretion.").

9

Following the presentation of these witnesses, the court asked the State and the defendants whether it should give the limiting instruction again, and all parties agreed that the court should wait to repeat the instruction during the jury charges at the end of trial, which it did.[15] Given that qualified jurors under oath are presumed to follow a trial court's instructions,[16] there was very little, if any, danger that the jury considered the evidence solely related to Brown's prior acts against Cuyler.[17]

Lastly, Cuyler has not shown that his and Brown's defenses were antagonistic, as they both presented alibi witnesses and testified in their own defense that they did not participate in the robbery at all. Such defenses are not mutually exclusive.[18]

---

[15] In addition to reiterating its previous instructions that certain evidence presented by the State of other crimes allegedly committed by Brown should only be considered as to Brown's motive intent, and plan, the court charged the jury twice that it must consider the charges against each defendant individually and separately.

[16] *See Holmes v. State*, 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001) ("Qualified jurors under oath are presumed to follow the instructions of the trial court." (punctuation omitted)).

[17] *See Billings v. State*, 293 Ga. 99, 105-06 (6) (745 SE2d 583) (2013) (rejecting an appellant's argument that he was entitled to a severance of his trial from that of his co-defendant's when, *inter alia*, similar-transaction evidence related to the co-defendant did not directly implicate the appellant and the trial court gave an appropriate limiting instruction).

[18] *See, e.g., Denny v. State*, 281 Ga. 114, 116 (1) (636 SE2d 500) (2006) (noting that co-defendants' defenses were not antagonistic to each other because both denied

10

Furthermore, Brown never made any incriminating statements implicating Cuyler that were presented at trial.[19] Under these particular circumstances, the trial court did not abuse its discretion in denying Cuyler's request for a severance because he did not meet his burden of showing the requisite prejudice sufficient to warrant a severance of the joint prosecution.[20]

---

being at the crime scene); *Martin*, 162 Ga. App. at 704 (2) (noting that the defendant seeking a severance's defense was not antagonistic to that of his co-defendant when both defendants claimed that they were not present at and did not participate in a robbery).

[19] *See, e.g.*, *Daniel*, 285 Ga. at 408 (3) (b) (holding that the trial court did not abuse its discretion in denying a severance when, *inter alia*, there was no testimony or statement to police by one co-defendant that directly implicated the other co-defendant, who was seeking a severance, in the crime).

[20] *See Green*, 274 Ga. at 688 (2) (holding that a trial court did not abuse its discretion in denying a motion to sever a defendant's trial from that of his two co-defendants when there was nothing in the record to suggest that trying the three defendants together confused the jury, there was no likelihood that evidence submitted against one defendant would be improperly considered against a co-defendant, and the appellant made no attempt to explain how antagonistic defenses of his co-defendants prejudiced his due process rights); *Ray*, 338 Ga. App. at 829 (2) (holding that severance of joint prosecution was not warranted when there was evidence that the co-defendants all played a role in a single robbery, and they all claimed to have had no involvement in the crime).

2. Cuyler next argues that the trial court erred when it failed to grant a mistrial or give an adequate curative instruction to the jury after the victim improperly testified as to his character. This claim is likewise without merit.

Whether to grant a mistrial based on improper character evidence is within the discretion of the trial judge.[21] As a general matter, the character of the defendant should not come into evidence "unless he chooses to put his character in issue and when prejudicial matter is improperly placed before the jury, [and] a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial."[22] Moreover, in reviewing the trial court's decision, an appellate court "may consider the nature of the statement, the other evidence in the case, and the court's and counsel's action in dealing with the impropriety."[23] Furthermore, we also consider additional facts like whether "the reference to the improper character

---

[21] *See Sims v. State*, 268 Ga. 381, 382 (2) (489 SE2d 809) (1997).

[22] *Smallwood v. State*, 334 Ga. App. 224, 225 (1) (779 SE2d 1) (2015) (punctuation omitted); *see Smith v. State*, 288 Ga. 348, 350 (3) (703 SE2d 629) (2010) ("When a prejudicial matter is improperly placed before the jury, a mistrial is appropriate if it is essential to the preservation of the defendant's right to a fair trial." (punctuation omitted)).

[23] *Sims*, 268 Ga. at 382 (2); *accord Jones v. State*, 251 Ga. App. 285, 287 (2) (a) (554 SE2d 238) (2001).

12

evidence is isolated and brief, whether the jury's exposure was repeated or extensive, and whether the introduction of the objectionable evidence was inadvertent or whether it was deliberately elicited by the State."[24]

Here, Cuyler complains that two statements made by Gilbert during his testimony improperly commented on his character, but he concedes that the State did not intentionally solicit either statement. The first statement was Gilbert's response when the State asked him to identify Cuyler in the courtroom and describe his clothes. Specifically, Gilbert testified,

> Cuyler[ ] is the guy that's on defense with . . . the orange and blue shirt, the different colored shirt on with the low haircut now. He used to have . . . like a Fro, an Afro and stuff before. I guess he went through the system—been in the system for doing his chain[-]gang time or whatever.

Cuyler's trial counsel immediately objected, arguing that this testimony placed his client's character into evidence. But following a bench conference, the court merely instructed Gilbert to continue testifying without commenting on the reason why Cuyler's hairstyle may have changed. The bench conference was not transcribed, however, and it is unclear whether Cuyler's counsel moved for a mistrial at this time

---

[24] *Smallwood*, 334 Ga. App. at 225-26 (1) (punctuation omitted); *accord Jackson v. State*, 321 Ga. App. 607, 610 (1) (739 SE2d 86) (2013).

13

or instead requested a curative instruction.[25] And in the absence of any request for a mistrial, the trial court was "required to act sua sponte only if there was a manifest necessity for a mistrial,"[26] which "requires urgent circumstances."[27] Moreover, to the extent Cuyler argues that the trial court erred in failing to grant a mistrial *sua sponte* based solely on the victim's vague and unsolicited suggestion that Cuyler may have been incarcerated for some unspecified reason prior to trial, we disagree that such testimony necessitates a mistrial.[28]

---

[25] When Cuyler's counsel objected, she indicated that she would "make a motion at a sidebar," but the trial transcript does not reveal whether she did so. Nevertheless, even if counsel had moved for a mistrial at this time, the trial court did not abuse its discretion in denying the motion as to Gilbert's "chain gang" comment for the reasons set forth *infra*. *See infra* note 28 & accompanying text.

[26] *Gonzalez v. State*, 310 Ga. App. 348, 350 (714 SE2d 13) (2011); *accord Cox v. State*, 293 Ga. App. 98, 102 (3) (666 SE2d 379) (2008).

[27] *Gonzalez*, 310 Ga. App. at 350 (2); *accord Cox*, 293 Ga. App. at 102 (3); *see id.* ("[A] trial court's decision whether to grant a mistrial based upon manifest necessity is entitled to great deference.").

[28] *See Lanier v. State*, 288 Ga. 109, 110 (2) (702 SE2d 141) (2010) (explaining that neither "a passing reference to a defendant's criminal record" nor a "nonresponsive answer that impacts negatively on a defendant's character" improperly places his character at issue); *Billings v. State*, 308 Ga. App. 248, 253 (4) (707 SE2d 177) (2011) (same).

The second statement Cuyler claims warranted a mistrial was made by Gilbert in response to a question about whether he was familiar with a particular car driven by Brown's girlfriend. Specifically, Gilbert testified,

> Yeah, I seen the car. I used the car all the time. Like I say, they stayed—we all stayed in the same neighborhoods and stuff like that together, and pretty much the same car that other crimes were committed in, you know. Like I said Willie Cuyler is my homeboy's best friend. Everything Willie Cuyler used to tell my homeboy about the things that [Brown] and Willie Cuyler used to do together, like other robberies and stuff like that . . . .

Immediately following this testimony, both Brown and Cuyler objected, and Cuyler's counsel specifically argued that this statement, coupled with the earlier "chain gang" comment, improperly placed Cuyler's character in evidence. But neither defendant moved for a mistrial at this time. In response, the court stated twice that it would overrule the objections, but that it would instruct the jury to disregard the objectionable testimony. And while Cuyler claims that the trial court did not directly address the jury in making this ruling or otherwise ensure that the jury "observed" the instruction, the court stated more than once *in the jury's presence* that the testimony just given by Gilbert should be disregarded. Cuyler's argument as to how the court

15

phrased the instruction appears to be based purely on semantics, rather than any substantive legal authority.

Then, at the close of the State's case, Cuyler's counsel moved for a mistrial based solely on Gilbert's "chain gang" comment, which suggested that Cuyler had been incarcerated, arguing again that it improperly placed Cuyler's character into evidence. The trial court denied the motion, and as previously explained, did not abuse its discretion in doing so because a passing reference to a defendant's previous incarceration does not necessitate a mistrial.[29] Furthermore, although the State requested that the court give a cautionary instruction to the jury about the statement, Cuyler's counsel objected on the basis that giving such an instruction at that time would place undue emphasis on it.[30] And when, as here, counsel strategically refuses a trial court's proffer of a curative instruction, the court's failure to grant a mistrial is not an abuse of discretion.[31] In sum, the trial court did not abuse its discretion in

---

[29] *See supra* note 28.

[30] *See Hinely v. State*, 275 Ga. 777, 782 (2) (d) (573 SE2d 66) (2002) (holding that it was reasonable trial strategy for defense counsel to decline a curative instruction regarding a reference to the defendant's prior incarceration on the basis that it would place undue emphasis on the testimony).

[31] *See Kitchens v. State*, 289 Ga. 242, 246 (4) (710 SE2d 551) (2011); *see also Eastep v. State*, 170 Ga. App. 401, 403 (3) (a) (317 SE2d 259) (1984) (holding that

16

failing to grant a mistrial based on the witness statements detailed *supra* because, in each case, Gilbert merely provided brief, isolated, and unsolicited testimony that may have negatively impacted Cuyler's character.[32]

3. Cuyler also argues that his counsel was ineffective for failing to move for a mistrial based on certain testimony of the victim and for failing to investigate and subpoena additional witnesses for trial. Again, we disagree.

In evaluating claims of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[33] "which requires [a defendant] to show that his trial counsel's performance was deficient and that the deficient

a defendant who declined the court's offer to give a curative instruction to disregard a witness's outburst could not complain on appeal that no such instruction was given, as "induced error is impermissible").

[32] *See Hinely*, 275 Ga. at 782 (2) (d) (explaining, in case in which there was brief testimony suggesting that the defendant had been incarcerated, that, even if his counsel had moved for a mistrial, no mistrial would have been granted because "a nonresponsive answer that impacts negatively on a defendant's character does not improperly place the defendant's character in issue" (punctuation omitted)); *Hansley v. State*, 267 Ga. 48, 49 (3) (472 SE2d 305) (1996) (holding that the trial court did not abuse its broad discretion in denying the defendant's motion for a mistrial after a State witness volunteered, in a nonresponsive answer, that the witness had seen the defendant "pull [the murder weapon] on one of the witness's friends"); *supra* note 24 & accompanying text.

[33] 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984); *see also Ashmid v. State*, 316 Ga. App. 550, 556 (3) (730 SE2d 37) (2012).

performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[34] Additionally, there is a strong presumption that trial counsel's conduct "falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption."[35] And when, as here, trial counsel does not testify at the motion for new trial hearing, "it is extremely difficult to overcome this presumption."[36] Lastly, unless clearly erroneous, this Court will "uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*."[37]

---

[34] *Howard v. State*, 340 Ga. App. 133, 139 (3) (796 SE2d 757) (2017) (punctuation omitted); *see Strickland*, 466 U.S. at 687 (III); *Ashmid*, 316 Ga. App. at 556 (3).

[35] *Howard*, 340 Ga. App. at 139 (3); *accord Chapman v. State*, 273 Ga. 348, 350 (2) (541 SE2d 634) (2001); *see Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) ("A claim of ineffective assistance of counsel is judged by whether counsel rendered reasonably effective assistance, not by a standard of errorless counsel or by hindsight." (punctuation omitted)).

[36] *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003) (punctuation omitted).

[37] *Howard*, 340 Ga. App. at 139 (3) (punctuation omitted); *accord Sowell v. State*, 327 Ga. App. 532, 539 (4) (759 SE2d 602) (2014).

(a) *Failure to Move for a Mistrial*. In a claim related to the previous enumeration of error, Cuyler argues that he received ineffective assistance of counsel because his counsel failed to move for a mistrial based on Gilbert's testimony that Cuyler had been "in the system" or doing "chain[-]gang time." This claim is belied by the record. As previously explained, Cuyler's counsel objected when this testimony was initially given, indicating that she would make a motion in a sidebar, but the sidebar was not transcribed. Nevertheless, at the close of the State's case, Cuyler's trial counsel moved for mistrial based solely on the complained of testimony. Thus, Cuyler is simply incorrect that his counsel failed to move for a mistrial on that basis. And to the extent Cuyler argues that his counsel should have moved for mistrial on the record immediately after the "chain gang" comment was made, any such motion would have been denied for the reasons discussed in Division 2, *supra*. As we have repeatedly explained, "[t]he failure to make a meritless motion or objection does not provide a basis upon which to find ineffective assistance of counsel."[38]

(b) *Failure to Call Witnesses*. Cuyler further contends that his counsel was ineffective for failing to investigate and subpoena several witnesses for trial. But

_____

[38] *Johnson v. The State*, 340 Ga. App. 429, 436 (4) (797 SE2d 666) (2017).

19

during his trial, Cuyler presented an alibi defense that he could not have committed the charged offenses because he was at a club celebrating a friend's birthday the entire night. Indeed, Cuyler testified in support of this alibi, and his counsel presented five other witnesses to testify as to his whereabouts on the evening in question,[39] including his mother, his uncle, his uncle's girlfriend, and two friends, all of whom were present at the club, except Cuyler's mother. In addition to the witness testimony, the defense presented the jury with at least one picture of Cuyler at the event. If believed, the multiple defense witnesses established that Cuyler went to the club with his uncle and his uncle's girlfriend between 8:00 and 9:00 p.m. and left at approximately 1:15 a.m.[40]

Nevertheless, Cuyler now argues that his counsel was ineffective for failing to subpoena and call five *additional* witnesses to testify as to his presence at the birthday party. But at the motion-for-new-trial hearing, Cuyler presented testimony

---

[39] Although the responding officer referred to the date of the attack as August 20, 2013, and defense witnesses repeatedly referenced the date of the birthday party as August 21, 2013, it appears evident from the transcript as a whole that all of the witnesses were testifying regarding the same date. Both dates may have been referenced because the relevant events occurred both before and after midnight.

[40] As previously noted, the police officer responded to Gilbert's apartment around 11:40 p.m. on the night in question, and thus, the defense contended that Cuyler was at the birthday party when the charged offenses occurred.

of only a single potential witness, who testified that he was not subpoenaed for trial, but that he knew that Cuyler was at the party until at least 11:40 p.m. or 11:50 p.m. This testimony, however, is essentially the same as that of the other witnesses who testified at trial, and a trial counsel's failure to present cumulative evidence does not constitute ineffective assistance of counsel.[41] Lastly, as to Cuyler's general argument that there were five additional unnamed alibi witnesses who his trial counsel should have subpoenaed, his failure to present a proffer at the motion-for-new-trial hearing as to how those witnesses would have testified is fatal to his claim.[42]

4. Finally, Cuyler argues that the trial court erred by failing to merge his convictions for attempted armed robbery and aggravated assault for sentencing purposes. Once again, we disagree.

---

[41] *See Jefferies v. State*, 267 Ga. App. 694, 697-98 (1) (600 SE2d 753) (2004) (holding that counsel was not ineffective for failing to subpoena two alibi witnesses when their testimony would have been cumulative of that of other witnesses) ; *Jordan v. State*, 230 Ga. App. 344, 345 (c) (496 SE2d 486) (1998) (rejecting a defendant's claim that his trial counsel was ineffective for failing to subpoena a number of character witnesses whose testimony would have been cumulative testimony that was presented at trial).

[42] *See Newby v. State*, 338 Ga. App. 588, 594 (3) (c) (791 SE2d 92) (2016) (holding that the defendant failed to establish that his counsel was ineffective for failing to call certain unnamed witnesses to testify when he presented no proffer as to how they would have testified); *Boykins-White v. State*, 305 Ga. App. 827, 829 (1) (701 SE2d 221) (2010) (same).

The question of whether offenses merge is, of course, "a legal question that we review de novo."[43] And our Supreme Court has explained that when "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."[44] Furthermore, a single act may be an offense against two statutes; "and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."[45] And here, although the attempted armed robbery statutory provision required proof of a substantial step of a taking, which was not a required showing under the applicable aggravated assault provision, "the latter provision did not require proof of

---

[43] *Morris v. State*, 340 Ga. App. 295, 312 (7) (797 SE2d 207) (2017).

[44] *Oliphant v. State*, 295 Ga. 597, 602 (4) (b) (759 SE2d 821) (2014) (punctuation omitted); *see Drinkard v. Walker*, 281 Ga. 211, 215 (636 SE2d 530) (2006) ("Under the 'required evidence' test, . . . [t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (punctuation omitted)).

[45] *Drinkard*, 281 Ga. at 215 (punctuation omitted); *accord Southwell v. State*, 320 Ga. App. 763, 764 (1) (740 SE2d 725) (2013).

22

any fact that was not also required to prove the attempted armed robbery."[46]

Significantly, though, "[when] one crime is completed before the other begins, there is no merger."[47]

In this case, Count 1 of the indictment charged Cuyler and Brown with attempted armed robbery,[48] in that on August 20, 2013, with the intent to commit armed robbery, they

> knowingly and intentionally perform[ed] an act which constituted a
> substantial step toward the commission of said crime, to-wit: did with

---

[46] *Garland v. State*, 311 Ga. App. 7, 13 (714 SE2d 707) (2011) (footnotes omitted); *see Reed v. State*, 318 Ga. App. 412, 415 (2) (734 SE2d 113) (2012) (explaining that "when convictions for aggravated assault and attempted armed robbery merge as a matter of fact, the aggravated assault conviction is the lesser offense and should be merged into the attempted armed robbery conviction").

[47] *Culbreath v. State*, 328 Ga. App. 153, 157 (2) (b) (ii) (761 SE2d 557) (2014); *see Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009) (holding that convictions for aggravated assault and armed robbery did not merge for sentencing purposes when the aggravated assault was completed outside of a home before the armed robbery began inside the home).

[48] *See* OCGA § 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."); OCGA § 16-8-41 (a) ("A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.").

intent to commit a theft force open a door to a residence . . . , did yell "Give it up," did fire multiple shots from an unknown type of handgun at . . . Gilbert and did search the pants of . . . Gilbert, contrary to the laws of [this] State, the good order, peace[,] and dignity thereof.

Similarly, Count 2 of the indictment charged Cuyler and Brown with aggravated assault,[49] in that on August 20, 2013, they "did make an assault upon the person of . . . Gilbert, with unknown type handguns, deadly weapons, by firing the unknown type of handguns at . . . Gilbert multiple times striking him, contrary to the laws of [this] State, contrary to the good order, peace[,] and dignity thereof."

Consistent with the indictment, the evidence showed that the attempted armed robbery began when Cuyler kicked down Gilbert's door, entered his home with a firearm, and demanded that he "give it up." And the attempt to rob Gilbert at gunpoint continued until Brown tripped him outside the home, pointed a gun at him, and attempted to pull down his pants, presumably in an effort to steal money. But then, Gilbert escaped, and no longer evidencing any attempt to rob him, Brown followed

---

[49] *See* OCGA § 16-5-21 (a) (2) (2006) ("A person commits the offense of aggravated assault when he or she assaults[,] . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.").

him, shot him twice in the stomach, and fled.[50] Under these particular circumstances, the final shots fired at Gilbert constituted an aggravated assault that began *after* the attempted armed robbery ended, and the trial court did not err in failing to merge those convictions.[51]

---

[50] Although Brown, not Cuyler, shot Gilbert just before they fled, our Supreme Court has held that "evidence of a defendant's conduct prior to, during, and after the commission of a criminal act will authorize the defendant's conviction for commission of the criminal act if a jury could infer from the conduct that the defendant intentionally encouraged the commission of the criminal act." *Bolden v. State*, 278 Ga. 459, 461 (1) (604 SE2d 133) (2004) (punctuation omitted); *see* OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.").

[51] *See Thomas v. State*, 289 Ga. 877, 880-81 (3) (717 SE2d 187) (2011) (holding that a conviction for armed robbery that resulted from a "holdup" in one room did not merge with a conviction for aggravated assault that resulted from the defendant's action of forcing a shotgun down the victim's throat later in another room did not merge for sentencing purposes); *Culbreath*, 328 Ga. App. at 157 (2) (b) (ii) (holding that convictions for attempted armed robbery and aggravated assault did not merge because the attempted robbery of the victim occurred downstairs when the defendant pointed a gun at the victim and demanded money, while the aggravated assault occurred upstairs when the defendant shot at the victim); *Stubbs v. State*, 293 Ga. App. 692, 694 (2) (667 SE2d 905) (2008) (holding that an attempted armed robbery was complete when the defendant pointed a gun at the victim and demanded money, and the defendant committed a separate aggravated assault, which did not merge with the prior offense, when, after the victim refused to give him money, he immediately struck the victim in the face with the gun just before fleeing the scene). *Cf. Curtis v. State*, 330 Ga. App. 839, 846 (2) (769 SE2d 580) (2015) (holding that convictions for aggravated assault and armed robbery merged when the victim was "still being pistol whipped" when the perpetrators asked "what you got" and took his wallet); *Crowley v. State*, 315 Ga. App. 755, 757-58 (2), 759 (3) (728 SE2d 282)

For all these reasons, we affirm Cuyler's convictions.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

(2012) (holding that convictions for aggravated assault and armed robbery merged when one perpetrator pointed a gun at the victim, yelled at him to "give the s—t up," hit the victim on the side of the head with the gun, and kept yelling while the other perpetrator took items from the victim after which the perpetrators fled).